UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

JEANETTE I. HUMPHREY,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.

17-CV-1329-A
**DECISION AND ORDER**

---

The plaintiff, Jeanette I. Humphrey, brought this action under the Social Security Act for judicial review of a determination by the Commissioner of Social Security (the "Commissioner") that she was not disabled. Dkt. No. 1. The Court has jurisdiction under 42 U.S.C. §§ 405(g) and 1383(c)(3).

On November 9, 2018, Humphrey moved pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings, and on January 8, 2019, the Commissioner responded and cross-moved for judgment on the pleadings. Dkt. Nos. 15 and 19. Humphrey filed a reply on January 26, 2019. Dkt. No. 20.

For the reasons stated below, the Court finds that substantial evidence in the administrative record supports the Commissioner's conclusion that Humphrey was not disabled. Some of Humphrey's claims of error in the disability determination are well-founded, but the errors are harmless procedural errors, and there is no material gap in the administrative record requiring further proceedings. The Court therefore

affirms the Commissioner's decision, grants the Commissioner's cross-motion for judgment on the pleadings, and denies Humphrey's motion.

## I. ADMINISTRATIVE PROCEEDINGS.

On November 23, 2013, Humphrey applied for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401–33 and 1381–83c. Tr. 86-87[1]. She alleged that she had been disabled since May 16, 2013, primarily due to injuries suffered in a car crash. *Id.*

On February 12, 2014, Humphrey received notice that her applications had been denied because she was not disabled under the Act. Tr. 86-87. She requested a hearing before an administrative law judge ("ALJ"), which began on March 17, 2016. Tr. 20, 33-66. At the request of the ALJ, Humphrey then submitted to a consultative examination by a general surgeon, Tr. 617-20, and a supplemental hearing was held on June 9, 2016. Tr. 67-85.

The ALJ issued a decision on July 28, 2016, finding that Humphrey was not disabled because the Commissioner had shown that, despite her severe physical impairments, she was able to perform "substantial gainful" work at a job that exists in the national economy. Tr. 17-32. Humphrey appealed the ALJ's decision to the Appeals Council, Tr. 200-03, but her administrative appeal was denied, and the ALJ's decision became final on October 27, 2017. Tr. 1-6. On December 26, 2017, Humphrey filed this action for judicial review of the ALJ's decision. Dkt. No. 1.

---

[1] Citations to "Tr. __" are to pages in the administrative record at Dkt. No. 7.

2

## II. MEDICAL EVIDENCE.

The following briefly summarizes the medical evidence most relevant to Humphrey's claims. Humphrey was treated and examined by several different medical providers; the opinions of Dr. Cameron B. Huckell, orthopedic surgeon, Dr. Patibha Bansal, pain management specialist, and Dr. Rita Figueroa, general surgeon, are most significant.

### A. Dr. Cameron B. Huckell, Orthopedic Surgeon.

Dr. Huckell treated Humphrey for approximately eight months from August 2013 through January 2014. After each visit, Dr. Huckell reported: (1) diminished deep tendon reflexes of 1+ at the bilateral upper extremities; (2) pathologic reflexes evidenced by a positive Hoffman sign on the left; (3) a reduced range of cervical and lumbar spine motion; and (4) a negative SLR test bilaterally. *See* Dkt. No. 15 at 5-10 (plaintiff's summary). Dr. Huckell initially recommended that Humphrey consider conservative care with gentle chiropractic adjustments and massage therapy. *Id.* Throughout the treating relationship, Dr. Huckell opined that Humphrey was temporarily disabled. *Id.* at 9.

When Humphrey complained of worsening neck symptoms during an office visit in January 2014, Dr. Huckell concluded: "[i]n my opinion she is a candidate for an anterior cervical discectomy, partial corpectomy and fusion with allograft bone cage and plate at C4-C7." Tr. 438. But Humphrey declined to have the neck surgery, Tr. 44, and discontinued treatment with Dr. Huckell. *See* Dkt. No. 15 at 29.

A few months later, she reported to a pain management specialist that Dr. Huckell "declined to operate on her lumbar spine." Tr. 448[2].

### B. Dr. Patibha Bansal, Pain Management Specialist.

Approximately eight months after Humphrey discontinued treatment with Dr. Huckell, she commenced treatment with Dr. Bansal. Dr. Bansal treated Humphrey seven times between September 2014 to February 2015. *See* Dkt. No. 15 at 12-15 (plaintiff's summary). The initial consultation was for low back and neck pain. Tr. 568-73. As time went on, Humphrey reported worsening neck and back pain with knee, and ankle problems. Dkt. No. 15 at 14. In February of 2015, Dr. Bansal noted that Humphrey was looking for a job. Tr. 593. After each of Humphrey's visits, Dr. Bansal opined that she had a temporary impairment level of 75%. *See* Tr. 575, 578, 581, 584, 588, 591, 594.

### C. Dr. Rita Figueroa, General Surgeon.

After Humphrey's first hearing in front of the ALJ, in March of 2016, she underwent an Internal Medicine Examination by consulting general surgeon Dr. Figueroa. *See* Dkt. No. 15 at 15. Dr. Figueroa diagnosed Humphrey with Cervicalgia and Lumbago. Tr. 620. Dr. Figueroa did not review Humphrey's medical records or perform any diagnostic testing. Tr. 617-20. Dr. Figueroa found that Humphrey had neck pain and low back pain that Humphrey rated an 8 out of 10, but she also noted Humphrey's remarks that she was able to cook, clean, launder,

---

[2] The pain management specialist was Conrad R. Williams, M.D.

4

shop, and care for her children every day.  Tr. 617-18.  Dr. Figueroa also found that Humphrey had a normal gait, and could walk on her heels and toes and rise from a chair without difficulty.  Tr. 618.  Humphrey had reduced range of motion in her cervical and lumbar spine, and cracking in her knees, but had no sensory deficits, full strength in her arms and legs, no evidence of muscle atrophy, intact hand and finger dexterity, and full grip strength.  Tr. 619-20.  Dr. Figueroa opined that Humphrey had "mild limitations to repetitive bending, lifting, and carrying, mild to turning motions of the neck, and mild motion to prolonged reaching, pushing and pulling."  Tr. 620.

### III.   SUMMARY OF THE ALJ'S DECISION.

In denying Humphrey's application, ALJ Bryce Baird evaluated Humphrey's claim under the Social Security Administration's five-step sequential evaluation process for disability determinations.  20 C.F.R. § 404.1520.  At the first step of the evaluation, the ALJ must determine whether the claimant is currently engaged in substantial gainful employment.  *Id.* at § 404.1520(a)(4)(i).  If so, the claimant is not disabled.  *Id.*  If not, the ALJ proceeds to step two.  *Id.* at § 404.1520(a)(4).

At step two, the ALJ decides whether the claimant is suffering from any severe impairments.  20 C.F.R. § 404.1520(a)(4)(ii).  If there are no severe impairments, the claimant is not disabled.  *Id.*  If there are severe impairments, the ALJ proceeds to step three.  *Id.* at § 404.1520(a)(4).

At step three, the ALJ determines whether any severe impairment or combination of impairments meet or equal an impairment listed in the regulations.

5

20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairments meet or equal an impairment listed in the regulations, the claimant is disabled. *Id.* But if the ALJ finds that no impairments or combination of impairments meet any of the listed impairments, the ALJ proceeds to step four. 20 C.F.R. § 404.1520(a)(4).

As part of step four, the ALJ first determines the claimant's residual functional capacity ("RFC"). *See* 20 C.F.R. §§ 404.1520(a)(4)(iv); 404.1520(d)-(e). The RFC is an evaluation of the claimant that addresses severe and non-severe medical impairments to assess whether the claimant could perform past relevant work or engage in other work in the national economy. *Id.* at 20 C.F.R. § 404.1545.

After determining the claimant's RFC, the ALJ completes step four. 20 C.F.R. § 404.1520(e). If a claimant could perform past relevant work, he or she is not disabled, and the analysis ends. *Id.* at § 404.1520(f). But if the claimant cannot perform past relevant work, the ALJ proceeds to step five. *Id.* at §§ 404.1520(a)(4)(iv); 404.1520(f).

In the fifth and final step of the evaluation, the Commissioner bears the burden to present substantial evidence to show that the claimant is not disabled because the claimant is physically and mentally capable of adjusting to an alternative job. *See Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 404.1520(a)(v), (g). Specifically, the Commissioner bears the burden of proving that a claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy." *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999).

6

In this case, the ALJ determined under the first step that Humphrey had not engaged in substantial gainful employment since May 15, 2013. At step two, the ALJ found that Humphrey was suffering from the following severe impairments: degenerative disc disease of the cervical, thoracic, and lumbar spine; osteoarthritis of the left knee and left shoulder[3]. At step three, the ALJ determined that Humphrey did not have a severe impairment or impairments that met or were equal to an impairment listed in the regulations. See 20 C.F.R. § 404.1520(a)(4)(iii).

As part of step four, the ALJ determined Humphrey's residual functional capacity. He found that Humphrey could perform light work as defined by 20 C.F.R. 404.1567(b), but with the following specific limitations:

> the claimant can lift and carry 20 pounds occasionally and 10 pounds frequently; sit four hours in an eight hour workday; walk two hours and stand two hours per workday; must be allowed to sit up for 15 minutes after 60 minutes of standing or walking (while remaining on task); can frequently use hand controls with the right hand, occasionally use hand control with the left hand; can frequently climb ramps or stairs, but may not climb ladders, ropes or scaffolds. The claimant is limited to no crawling, and occasional balancing, stooping, kneeling, and crouching. She is limited to no more than frequent bilateral reaching including overhead reaching. She may not be exposed to more than a loud (as defined by Selected Characteristics of Occupations) noise environments, and is limited to no exposure to excessive vibration or hazards such as unprotected heights or moving machinery.

Tr. 23.

---

[3] Due to the lack of complaints or complications related to the condition, and based upon the lack of any treating source finding a limitation related to her hypertension, the ALJ noted that it was a non-severe impairment   Tr. 23.

After the ALJ determined Humphrey's RFC, he then proceeded to complete step four. A vocational expert testified during the supplemental hearing that a hypothetical person with Humphrey's RFC was unable to perform any past relevant work as a customer service loan clerk, loan officer, or customer service representative. *See* Tr. 26.

At the fifth step, the ALJ also determined that the Commissioner sustained her burden of establishing that Humphrey had the RFC to perform jobs that existed in significant numbers in the national economy. Specifically, the ALJ determined that Humphrey could work as a mailroom clerk, a telephone survey worker, or an office helper. Tr. 27.

**IV.   STANDARD OF REVIEW**

When reviewing a decision by the Commissioner, district courts have a narrow scope of review: they determine only whether the Commissioner's conclusions are supported by substantial evidence in the administrative record and whether the Commissioner applied the appropriate legal standards. *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Indeed, a district court must accept the Commissioner's findings of fact if they are supported by substantial evidence in the record. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla and includes "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009). In other words, a district court does not review a disability determination *de novo*. *See Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998).

8

**DISCUSSION**

Humphrey alleges that the ALJ's finding that she was not disabled was flawed for two primary reasons. *See* Dkt. No. 15 at 2. First, she argues that the ALJ erred by failing to address and to give reasons for rejecting treating physician opinions of Dr. Huckell and Dr. Bansal. *Id.* at 16. Second, she argues that the ALJ erred in failing to properly assess her "symptom intensity" and pain complaints. *Id.* at 25.

**A. Failing to Address Treating Physicians' Opinions.**

When determining a claimant's RFC, an ALJ must evaluate every medical opinion received. 20 C.F.R. § 416.927(c). "[O]nly 'acceptable medical sources' can be considered treating sources . . . whose medical opinions may be entitled to controlling weight. 'Acceptable medical sources' are further defined (by regulation) as licensed physicians, psychologists, optometrists, podiatrists, and qualified speech-language pathologists." *Genier v. Astrue*, 298 F. App'x 105, 108 (2d Cir. 2008) (ellipsis added; citing 20 C.F.R. § 416.913(a) and SSR 06-03p, 2006 WL 2329939 (Aug. 9, 2006))[4].

"Social Security Administration regulations, as well as [Second Circuit] precedent, mandate specific procedures that an ALJ must follow in determining the appropriate weight to assign a treating physician's opinion." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019). "First, the ALJ must decide whether the opinion is entitled

---

[4] A claimant's treating chiropractors are not considered a "medical source," and their opinions are not weighed as heavily as those of treating physicians. *Diaz v. Shalala*, 59 F.3d 307, 313 (2d Cir. 1995).

9

to controlling weight." *Id.* A treating physician's opinion is entitled to controlling weight if "it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case record." *Id.* (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)). "Second, if the ALJ decides the opinion is not entitled to controlling weight, [the ALJ] must determine how much weight, if any, to give it. In doing so, [the ALJ] must 'explicitly consider' the following nonexclusive '*Burgess* factors': '(1) the frequency, length, nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist.'" *Id.* (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). "At both steps, the ALJ must 'give good reasons in its notice of determination or decision for the weight it gives the treating source's medical opinion.'" *Id.* (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004)). If the ALJ fails to 'explicitly' apply the *Burgess* factors, it is a procedural error. *Id.* at 3 (quoting *Selian*, 708 F.3d at 419-20). And if the Commissioner has not otherwise provided good reasons for assigning particular weight to the opinion, "[a court will be] unable to conclude that the error was harmless and consequently [must] remand for the ALJ to 'comprehensively set forth [the] reason[ing].'" *Id.* (quoting *Halloran*, 362 F.3d at 33).

1. **Failure to Address the *Burgess* factors.**

The ALJ committed a procedural error by failing to make explicit *Burgess*-factor findings to justify the decision not to give controlling weight to opinions of Dr.

Huckell and Dr. Bansal, two of Humphrey's treating physicians. For example, the ALJ failed to "explicitly consider" the first *Burgess* factor—"the frequency, length, nature, and extent of treatment"—before discounting the value of Dr. Huckell's opinion that Humphrey was temporarily disabled. Nowhere in the decision does the ALJ mention the 8-month duration of Dr. Huckell's treating relationship with Humphrey. Nowhere does the ALJ discuss how, just before Humphrey discontinued treating with Dr. Huckell, he reversed his earlier recommendation that Humphrey obtain conservative care with gentle chiropractic adjustments and massage therapy and concluded that she was "a candidate for" anterior cervical discectomy, partial corpectomy, and fusion with allograft bone cage and plate surgery at C4-C7 (which she declined), but not lumbar surgery. See Tr. 448.

The ALJ did address the third *Burgess* factor—the consistency of the opinion with the remaining medical evidence—by explicitly stating that Dr. Huckell's findings were inconsistent with Humphrey's conservative treatment history and the many routinely normal findings[5]. Nevertheless, suffice it to say that the ALJ committed procedural error when he did not explicitly apply the *Burgess* factors when assigning little weight to Dr. Huckell's opinion.

The ALJ also failed to articulate why he declined to give controlling weight to Dr. Bansal's opinion. Dr. Bansal, a pain-management specialist, treated Humphrey

---

[5] On the three occasions Humphrey visited Dr. Huckell, from August 2013 to January 2014, Dr. Huckell noted that Humphrey had a "functional range of motion in the shoulders and knees, negative straight leg raises, and full strength in the upper and lower extremities." Tr. 24-25.

11

from September 2014 through February 2015. Dr. Bansal's opinion that Humphrey was temporarily 75 percent disabled during this time period was generally poorly supported in his clinical record, and it was inconsistent with the other substantial medical and other evidence in the case record. For example, Dr. Bansal may have concluded that Humphrey could not walk more than 150 feet. Nevertheless, Humphrey was able to engage in functional daily activities without the assistance of a walking device, Dr. Bansal recommended a life-long stretching and strengthening program, and the walking limitation was inconsistent with Dr. Bansal's finding that Humphrey had normal gait, stance, and strength during his examination in September of 2014. Nevertheless, the ALJ clearly failed to explicitly address the *Burgess* factors before assessing the value of Dr. Bansal's opinion. *See* Tr. 20-27.

### 2. Failure to Explicitly Apply the *Burgess* Factors was Harmless.

An ALJ must evaluate "all the evidence in the case record to determine the extent to which the opinion is supported." *Drozdowski v. Colvin*, 15-CV-MJR, 2016 WL 5402698 *8 (W.D.N.Y. Sep. 26, 2016) (quotation omitted). Then the ALJ must "provide good reason for rejecting treating source opinions — even laconic opinions." *Schramm v. Colvin*, 13-CV-WMS, 2014 WL 4627222 at *6 (W.D.N.Y. Sept. 13, 2014). In determining the weight to give medical opinions, ALJ should not "rely heavily on the findings of consultative physicians after a single examination." *Estrella v. Berryhill*, 925 F.3d 90, 98 (2d Cir. 2019) (quotation omitted).

Although the ALJ committed procedural error by not explicitly applying the "*Burgess* factors" to the treating physicians' opinions in this case, the Court finds the

12

error was harmless.  *See e.g.*, *Ryan v. Astrue*, 650 F. Supp. 2d 207, 217 (N.D.N.Y. 2009).  Generally, a harmless error occurs when proper application of the decision-making framework in the Social Security Act and regulations promulgated under it would not change the outcome of the ALJ's decision.  *See*, *Graves v. Astrue*, 2012 WL 4754740, *9 (W.D.N.Y. 2012) (error in an "ALJ's severity assessment with regard to a given impairment is harmless when it is clear that the ALJ considered the claimant's [impairments] and their effect on his or her ability to work during the balance of the sequential evaluation process."  *Id.* at *9 (quotation omitted)).

In this case, the ALJ's lack of discussion of Dr. Huckell's opinion did not harm Humphrey.  During the eight-month treating relationship between August 2013 through January 2014, Dr. Huckell found that Humphrey was temporarily disabled.  The Court finds — in light of the other medical evidence and other substantial evidence — that a properly explicit evaluation of Dr. Huckell's findings in the record would substantiate the finding that Humphrey had the limitations reflected in the ALJ's assessment, including the RFC limitations.

Like Dr. Huckell's opinion, Dr. Bansal's opinion did not address Humphrey's long-term disabilities.  Dr. Bansal opined that Humphrey was 75 percent temporarily impaired. The ALJ's decision, after evaluating all the evidence in the record, was not inconsistent with Dr. Bansal's opinion because the ALJ's RFC incorporated the limitations consistent with those that were supported by Dr. Bansal's records.

Humphrey argues that the ALJ should have contacted Dr. Bansal to clarify inconsistencies in the record.  In general, the Commissioner's regulations leave the

13

question of whether to recontact a medical source to the sound discretion of the ALJ. 20 C.F.R. §§ 404.1520b(c)(1). Certainly, an ALJ has a duty to contact a treating physician when the evidence from a treating physician or other medical sources is inadequate for the ALJ to decide whether a claimant is disabled. *Perez v. Chater*, 77 3d. 41, 47 (2d Cir. 1996). Here, the ALJ gave little weight to Dr. Bansal's "finding" from September 2014 that Humphrey could only walk for 150 feet, sit for 45 minutes, and stand for 30 minutes. But these walking limitations were inconsistent with his findings of Humphrey's "normal" gait, stance, and strength during the examination, and it appeared the statement may have been a recitation of Humphrey's report of her symptoms. In these circumstances, the ALJ's duty to contact Dr. Bansal was not triggered because the ALJ could determine from the evidence in the record that Humphrey was not totally disabled.

The ALJ did give significant weight to Dr. Figueroa's opinion, even though she was only a consulting physician. *See Estrella*, 925 F.3d at 98. But the ALJ relied heavily on her opinion because the opinion balanced Humphrey's alleged pain with a conservative treatment history, many routinely normal findings, lack of assistive walking devices, and Humphrey's job search. And Humphrey's RFC reflected Dr. Figueroa's findings that Humphrey could only perform light work that would accommodate her impairments. Accordingly, even if the ALJ relied too much on Dr. Figueroa's consultative opinion based upon a single examination, the error was harmless because the opinion was consistent with other substantial evidence the

ALJ could properly rely upon.  Humphrey therefore suffered no prejudice due to any excessive reliance on Dr. Figueroa's opinion.

   B.   **Discounting "Symptom Intensity" Under 20 C.F.R. §§ 404.1529 and 416.929 and Ruling SSR 16-3P.**

The ALJ considered Humphrey's symptom testimony and found that her statements were inconsistent with her medical record.  The evaluation of claimants' subjective symptoms "cannot be based on their general credibility but instead must be evaluated on the basis of the evidentiary record alone . . . and [must] be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms."  Soc. Sec. Rul. 16-3 (2016), 2016 WL 1020935 (rescinding and replacing Soc. Sec. Rul. 96-7p.).  The ALJ is required to specify which testimony the ALJ finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination.  *Chickori v. Astrue*, 534 F. App'x 71, 75-76 (2d Cir. 2013).  Pain that is "grossly disproportionate to the medical findings may be discounted as not credible."  *Murphy v. Schweiker*, 524 F. Supp. 228, 232 (E.D. Pa. 1981).  And a history of routine and conservative treatment "is a proper basis on which to discount symptom testimony."  *Shaffer v. Colvin*, 14-CV-00745-MAT, 2015 WL 9307349, at *5 (W.D.N.Y. Dec. 21, 2015).

Humphrey's medical record showed a conservative treatment history, lack of assistive walking devices, a six-month gap in treatment, and routine normal findings.  Dr. Huckell eventually recommended to Humphrey that she was a candidate for

15

neck surgery when her complaints of pain increased, but she declined the surgery, she ceased treatment with him, and she continued to receive conservative treatment. Humphrey's failure to get surgery and continuing her conservative treatment history were grounds for partially discrediting her testimony regarding the severity of her symptoms and pain.

In September 2014, Dr. Bansal stated that Humphrey could not walk more than 150 feet. The Court cannot disagree with the ALJ that the fact that Humphrey did not use any walking devices and was still able to engage in her daily life activities seems grossly disproportionate to this statement.

Humphrey did not receive treatment between June 2015 through January 2016. Humphrey argued that she underwent right inguinal hernia repair surgery on June 11, 2015 and was focusing on her recovery from the surgery. Considering that Humphrey continued to have allegedly very severe back and neck pain, this was a significant amount of time not to receive treatment. When Humphrey finally returned for treatment at the Greater Buffalo Accident and Injury Center in January 2016, she had a full range of neck motion and was able to sit without difficulty or evidence of pain.

The ALJ went through the specific testimony that he did not find credible and gave clear and convincing reasons supported by evidence in the record to make his credibility determination of Humphrey's symptoms and pain complaints. *See* Tr. 24-26. He considered Humphrey's symptom testimony from the entire medical record and gave specific reasons for partially discrediting the testimony that would allow a

subsequent reviewer to assess how he evaluated Humphrey's symptoms.  *Id.*  The Court therefore finds that the ALJ reasonably considered Humphrey's symptom testimony before finding her statements to be inconsistent with her medical record.  To the extent the ALJ should have been more explicit in setting forth his reasoning, the error was harmless.

## **CONCLUSION**

For the foregoing reasons, the Court cannot find that the ALJ's decision that Humphrey was capable of light work at jobs in the national economy was either unsupported by substantial evidence in the record or was the result of any legal error that was not a harmless error.  Accordingly, the Commissioner's decision, Tr. 20-27, is affirmed; Humphrey's motion pursuant to Fed. R. Civ. P. 12(c) for judgment on the pleadings, Dkt. No. 15, is denied; and the Commissioner's cross motion for judgment on the pleadings, Dkt. No. 19, is granted.  The Clerk of Court shall enter judgment in favor of the Commissioner.

**SO ORDERED**.

Dated:	June 24, 2019
	Buffalo, New York

			*s/Richard J. Arcara*
			RICHARD J. ARCARA
			UNITED STATES DISTRICT JUDGE